Plaintiff-appellant, Stassi, seeks by rule to evict LaHitte, defendant, his tenant, from the leased premises, 222 Rose Avenue, Oaklawn Subdivision, Jefferson Parish, for the alleged nonpayment of rent.
The suit is resisted upon the ground that defendant is entitled to a refund on several prior months' rent, which aggregates more than the rent which plaintiff claims is unpaid; that such refund is due defendant because plaintiff refused to repair certain defects in the leased premises, and that he also made additions to the premises, all of which lessened the services and accommodations which were due defendant under the lease. He reconvened, claiming $67.50.
After a trial on the merits, the court below dismissed both the main demand and the reconventional demand. Plaintiff alone has appealed.
Defendant occupies the premises under a month to month verbal lease at a rental of $40 payable in advance. On May 7, 1948, Stassi received defendant's check for $40, bearing the same date, in payment of the *Page 661 
rent ending June 6. Four days later, defendant stopped payment on the check.
On June 8, 1948, plaintiff caused a notice to be served upon defendant ordering him to vacate the premises within five days for nonpayment of rent. LaHitte testified that on the day preceding the service of this notice, he tendered to plaintiff a check for $80 for the months ending June 6 and July 6, 1948, which plaintiff declined to accept. On the other hand, Stassi claims that the check for $80 was not tendered until June 10, or two days after the notice had been served.
When asked why he had stopped payment on the first check, LaHitte answered, "Because I got tired of taking baths in rusty water that looked dirtier than the Mississippi River."
The testimony regarding the water heater is conflicting. LaHitte insists that he complained "100 times" about the heater and the drain pipe of the bathtub, which he contends is leaky and creates an insanitary condition. Stassi admits receiving a complaint about the heater in 1947, but claims that he had a new one installed, which cost $39, and that subsequent to its installation his tenant made no further complaint until after the vacate notice was served upon him.
It is conceded that Stassi erected a fence along the side of the house, which deprived LaHitte of the use of a strip of ground approximately eleven feet wide which he had previously used as an automobile driveway. Stassi claims, however, that the fence was erected with the consent of LaHitte, and that it was agreed that Stassi would erect a garage on the opposite side of the house with a driveway of equal size. Stassi erected the new garage, and LaHitte is now making use of this garage and driveway. It appears that Stassi also changed the entrance to the house from the side thereof to the front. LaHitte claims that the fence was built and the change in the entrance was made without his consent, while Stassi, on the contrary, testified that LaHitte agreed to the work and acquiesced in the changes after they were made. According to Stassi, LaHitte was present while the fence was being erected, and voluntarily gave advice and instructions to the carpenters who were doing the work. Stassi stated further that it required about two weeks for perfecting the change in the entrance, and that while the job was in progress LaHitte never complained, and that LaHitte's only complaint was registered after the vacate notice was served upon him.
The vacate notice was served on June 8, 1948. On the following day LaHitte visited the Housing Expediter, Office of Rent Control, and there filed a written complaint setting forth that Stassi had failed to repair the defective water heater and the leaky drain. Stassi was also charged with having made changes in the premises. When this matter was tried in the lower court, the complaint was still pending and was under investigation by the rent control officials.
The fact that LaHitte did not make a complaint to the Housing Expediter until after receiving the vacate notice, tends to lend credence to Stassi's statements that LaHitte at no time complained regarding the premises prior to the service of the notice. When the $40 check, upon which payment was later stopped, was given to Stassi, LaHitte knew that the fence had been erected and that the entranceway to the property had been changed, and it seems to us that by giving the check, with such knowledge, LaHitte acquiesced in the changes, and he had no valid reason which would warrant the stopping of payment on the check.
There is no dispute that during June the defendant tendered an $80 check to Stassi for two months rent, and that Stassi declined to accept the check. LaHitte's testimony is that he tendered the check on June 7, while Stassi maintains that the check was offered to him on June 10, after the notice had been served on his tenant. But the dispute as to the date of the tender is of no importance. However, Stassi's version appears to be the correct one, for we find that LaHitte testified that he tendered the rent to Stassi at the suggestion of the Housing Expediter, and the record shows that LaHitte did not visit the Housing Expediter until June 9. *Page 662 
Although conceding that ordinarily a lessor may dissolve a lease for failure on the part of the lessee to pay the rent promptly when due, appellee contends that the right to dissolve the lease is subject to judicial control according to circumstances, and that where the rent is offered to the lessor before suit to annul the contract of lease is filed, the lessor cannot annul the lease for the alleged nonpayment of the rent. Counsel cites in support of this argument the case of Edwards v. Standard Oil Co. of La., 175 La. 720, 144 So. 430. However, that case has no application here. The Court declined to annul the lease because of the particular circumstances which existed in the case. The facts were that the contract of lease was silent as to the place of payment of the rent, and that under the law the rent was, therefore, payable either at the leased premises or at the domicile of the tenant, which presupposed that the lessor was to call upon the tenant for his rent, which Edwards, the plaintiff, failed to do, and, therefore, the tenant was not in default.
The other cases cited by appellee are likewise not apposite.
In Lafayette Realty Co. v. Puglia, 10 Orleans App. 105, this court held that where no place of payment is stated in the lease the rent is to be paid at the dwelling of the tenant, and that by formally tendering the rent after maturity, but prior to default and to the filing of the suit, the defendant effectively stripped the landlord of his right to cancel the lease on the alleged ground of nonpayment of rent.
In Saxton v. Para Rubber Co. of La., 166 La. 866, 118 So. 64, the Supreme Court held that the lessee's failure to pay rent promptly in accordance with the terms of the lease is not a legal ground for dissolving the lease, where the lessor was unwilling to receive the rent and endeavored to trap the lessee into a technical breach of the lease.
In the instant case, however, we can find no circumstances which warranted the defendant's stopping payment of the check he had given to Stassi in payment of the rent which was due on May 7, 1948. Under the terms of the verbal lease, the rent was payable on the seventh day of each month in advance. Defendant's action in notifying his bank not to honor the check seems to have been arbitrary and groundless, and was supported only by his fancy that Stassi owed him a refund which was in an amount large enough to offset the amount of the check. Instead of pursuing whatever rights he may have had against Stassi in a legal manner, LaHitte chose to take the matter into his own hands and to be the judge of the dispute, and we do not think he should now be heard to set up that his belief that he had the right to stop payment on the check should militate against his landlord's success in this suit for eviction. Clearly there was a breach of the lease on the part of the defendant, and there is no reason why plaintiff should not be entitled to the relief which the law affords him.
Article 2710, Rev.Civ. Code, provides:
"The lessee is bound:
"1. To enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease.
"2. To pay the rent at the terms agreed on." Article 2712, Rev.Civ. Code, emphatically declares:
"The lessee may be expelled from the property if he fails to pay the rent when it becomes due."
For the above reasons, the judgment appealed from is reversed insofar as it dismisses plaintiff's suit, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff-appellant, and against defendant-appellee and occupants, condemning said defendants to vacate the leased premises within twenty-four hours from the finality of this decree; defendant-appellee to pay all costs of both courts. In all other respects, the judgment appealed from is affirmed.
Reversed in part, affirmed in part. *Page 663